Emmy Rienacker v. Commissioner. William Otto Rienacker v. Commissioner.
Rienacker v. Commissioner
Docket Nos. 20763, 20764.
United States Tax Court
1951 Tax Ct. Memo LEXIS 367; 10 T.C.M. (CCH) 6; T.C.M. (RIA) 51000; January 8, 1951
*367 Held, that a consideration of all the facts shows that petitioners in good faith and acting with a business purpose intended to be partners for Federal tax purposes during the year ended December 31, 1945. Louis W. Snyder, Esq., 1160 Nat. Bank Bldg., Detroit 26, Mich., for the petitioners. Thomas V. Lefevre, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion The respondent has determined deficiencies in income tax of William Otto and Emmy Rienacker, husband and wife, for the taxable year ended December 31, 1945, in the amounts of $3,215.61 and $1,423.70, respectively. William Otto Rienacker will hereinafter be referred to as petitioner. The cases were consolidated for trial. There are two questions presented: (a) Were petitioners partners for Federal tax purposes during the year ended December 31, 1945? (b) If not partners, is petitioner entitled to deduct as reasonable compensation for services to the business in question from 1934 to 1945, inclusive, the sum of $17,747.70, which Emmy reported in her distributive share of the partnership profits? Findings of Fact Part of the facts have been stipulated and they are so found. *368 The petitioners, husband and wife, resided in Ferndale, Michigan, during the taxable year 1945. The filed their separate Federal income tax returns for that year with the collector of internal revenue for the district of Michigan at Detroit. Petitioners were born and educated in Germany. Petitioner received a degree in mechanical engineering from a technical school in Germany. Petitioner and Emmy came to this country at the respective ages of 17. In approximately 1928 petitioner began working for the Kelsey Hayes Wheel Company in Detroit as an engineer and designer. He subsequently became chief engineer of its wire wheel division in charge of design of wheels for Ford Motor Company. During his employment with Kelsey Hayes a number of his inventions were patented. In 1932, dissatisfied with his salary and having in mind several inventions which he hoped to manufacture, petitioner decided to go in business for himself. He and Emmy then contemplated being married. Emmy had approximately $5,000 of her own money which she agreed to use for the purpose of buying machinery and equipment for such a business. They had determined that they would conduct their business in the partnership *369 form, each having a one-half interest in the business. Petitioner continued at Kelsey Hayes for about a year. The petitioners were married in June 1933. They began the business in question in 1933 in the garage in the rear of petitioner's home at 5732 Loraine Avenue, Detroit. Emmy used a substantial portion of her capital to purchase machines and equipment needed for the business. They decided to operate it under the name of "Dentool Products Company." To carry out their desire to conduct the enterprise as partners petitioners consulted an attorney and asked him to prepare the necessary papers. The attorney advised them that they could not be partners because of a prohibition in the laws of the State of Michigan against husband-wife partnerships. He advised petitioner that he would have to register this business under a separate name as a sole proprietorship. In 1934 the business of Dentool Products Company was registered as a sole proprietorship under the name of William Otto Rienacker. On or about November 1, 1934, it appearing that the books of the company were inadequate petitioners employed an accountant. He did all of the bookkeeping until about 1939 when he was succeeded *370 by another accountant. The new accountant established a new set of books and until 1945 did all of the bookkeeping and prepared all statements and income tax returns. As of November 1, 1934, the date of the opening journal entry of Dentool Products Company, the capital account showed a debit of $377.40. The journal entry upon which the original books of this business were opened comprised the following assets and liabilities: Account
Debit
Credit
Accounts receivable
$167.64
Prepaid rent
$ 37.00
Notes payable - Keller
250.00
Detroit Savings Bank - cash
8.92
Accounts payable
187.33
Accrued payroll
79.63
W. O. Rienacker - capital ac-
count
377.40
Totals
$553.96
$553.96 Petitioner's books did not properly reflect the assets and proprietorship accounts of the business. During the period from 1933 through 1942 Emmy performed substantial and vital services for the business. During this time she answered the telephone, took messages to her husband who was in the plant at the rear of their residence, helped make deliveries and secure raw materials used in the manufacture. She was also consulted as to production and concerning scheduling of *371 job orders. She visited the offices of their patent attorney to discuss patent applications for inventions of petitioner. In 1935 when petitioner was in Europe for three months Emmy acted as the head of the business. After the business moved to Ferndale, Michigan, as hereinafter described, Emmy was at the plant regularly for the first several months. In the fall of 1942 she was on the payroll for several weeks at a wage of $25 per week. After that she did not come to the plant as often as previously. On October 8, 1937, petitioner gave a receipt to Emmy. It was signed "Wm. Otto Rienacker". This receipt was for the amount of $2,600.92 which Emmy had advanced to the business. On the back of this receipt was the notation "not to be paid used for additional equipment as part owner." In 1940 the name of the business was changed from Dentool Products Company to Rienacker Industries. At that time petitioners again went to their attorney for advice as to conducting the business as a partnership. They were advised that the law of Michigan had not changed and that they could not operate as partners. By a statute, Act 272, Public Acts of Michigan, 1941, effective January 10, 1942, the prohibition *372 against a husband and wife conducting a business in the partnership form was removed. Petitioners' attorney called this change to their attention. He informed them to file papers with the proper county official. This was not done by the petitioners at that time. In early 1942 a new plant was constructed for petitioners at Ferndale, Michigan, on a piece of property which was purchased for such purpose in 1936. The business was moved from Loraine Avenue to Ferndale in the spring of 1942. At the time of the removal of the plant to Ferndale, there were three men in the shop. From its beginning the business had employed one or two men in the shop. The obtaining of war contracts and the general increase in business, however, made it necessary to hire additional men. In 1945 the business employed between 12 or 14 men. In 1943 a full-time office girl was hired. In the shop there was a general superintendent from 1942 through 1945. A general production foreman was hired in 1944. Another employee was in charge of core vent production. The enterprise was a success from the beginning. This was due largely to the core vent, the principal product manufactured by the business. The petitioner *373 had procured several patents in connection with that product. Shortly after the beginning of the business, petitioner obtained a contract with Chrysler Corporation to supply it with core vents. It remained one of the largest customers for the duration of the enterprise. Later on the business supplied core vents to Ford Motor Company. In addition it did general machine work. During the war when the business made a number of parts for howitzers, petitioner redesigned and made improvements in several of the parts. Petitioner did all of the designing for the business himself. From the beginning of the business to its dissolution, as hereinafter described, a proprietorship account was maintained on the books for petitioner. During the period from 1941 to April 30, 1946, both a capital and a drawing account were maintained. Neither a capital nor drawing account was maintained for Emmy prior to December 31, 1945. Emmy had no bank account until April 5, 1944, when she opened a checking account in a bank at Detroit with a deposit of $2,000. From that time on a number of substantial withdrawals of cash were made from the business which were deposited to the account of Emmy at the bank. *374 With the funds so obtained Emmy drew checks payable to the business which were shown on its books prior to December 31, 1945, as notes payable to her. Later during that year the greater part of these notes was repaid. At the close of 1945 when a capital account was first entered in the books of the business for Emmy, the notes payable account showed an indebtedness of $8,950 to her. This amount was transferred to her capital account by an entry dated January 1, 1946. The business maintained a bank account in a Detroit bank from 1934 throughout its existence. Later another account was opened in a different bank which was continued until the business was sold. Petitioner was the only person authorized to sign checks on these accounts. He maintained no personal bank account but drew checks for personal and family expenses on the business bank accounts, which were charged to his withdrawal account on the books of the business. On January 14, 1937, petitioner filed with the collector of internal revenue an "Employer's Application for Identification Number" under the United States Social Security Act. In that he listed himself as owner of Dentool Products Company. During all succeeding *375 periods from 1937 to September 30, 1945, he filed employer's returns under the Social Security Act and under the Federal Insurance Contributions Act listing himself as owner of the business located, first, at 5732 Loraine Avenue and later at the Ferndale address. Under the date of May 12, 1942, petitioners borrowed $2,500 from an individual. This loan was evidenced by a promissory note payable in 90 days at a Detroit bank. It was signed by petitioners as co-makers. The proceeds of this loan were deposited in the company's bank account and recorded as a company liability in notes payable account. Petitioner also filed returns of income taxes withheld on wages for the business located at Ferndale from March 31, 1943 to September 30, 1945, in which he listed himself as owner. Commencing in 1936 he obtained a series of loans from a Detroit bank for the business signing all of the notes himself. On June 2, 1945, a new assumed name registration certificate was filed for Rienacker Industries, listing petitioner and Emmy as individuals doing business under that name. During the rest of 1945 and early 1946 the books of account of Rienacker Industries and various of its reports, contracts *376 and other documents began to show Emmy as a partner. Petitioner listed himself as "co-owner" on Social Security tax returns and employer's return of income tax withheld for wages filed for the final quarter of 1945. On December 17, 1945, petitioner signed a contract for the purchase of war surplus materials listing himself and Emmy as "partners doing business under the firm name and style of Rienacker Industries." Emmy signed a verification of his authority to sign the contract. On December 31, 1945, a capital account was placed on the books of Rienacker Industries for Emmy and credited with one-half of the profits of business for 1945. As of the close of business on December 31, 1945, her newly created account showed a credit balance of $10,247.74. This amount represented half of the business income for 1945, less a debit for payment of income tax in the amount of $7,500. Petitioner's account showed a credit balance of $49,987.94. The reported income of the business from 1942 through 1945 was as follows: Year
Income
1942
$14,945.38
1943
18,034.93
1944
48,455.23
1945
35,495.49
On January 24, 1946, petitioners filed separate income tax returns for 1945, *377 each reporting half of the income of Rienacker Industries. A partnership return of income was also filed for that same year. On February 25, 1946, petitioner filed an amended income tax return for 1944 reporting only one-half of the business income for 1944. Emmy filed a return reporting the remaining one-half. A partnership return of income was also filed for that year. On March 8 and 9, 1946, petitioner and Emmy signed two notes for loans from a Detroit bank. In a form filed on April 30, 1946, with the Employment Tax Division of the Internal Revenue service in connection with a change in the Social Security registration of Rienacker Industries, the statement is made that the business became a partnership on January 1, 1945. On April 30, 1946, petitioner as a member of the partnership filed a certificate of discontinuance of the co-partnership of Rienacker Industries. On that date the partnership was dissolved and its assets transferred to Rienacker Industries, Incorporated. That corporation was organized on April 22, 1946, with an authorized capital stock of 20,000 common shares. Petitioners were listed as the incorporators and each subscribed for 10,000 shares. In 1947 *378 the assets of that corporation were sold and it was liquidated. A check for $25,000, representing part of the proceeds, was deposited in Emmy's account. The petitioners have difficulty expressing themselves in English. The respondent has determined that there was no valid partnership between the petitioners during the year 1945 and that consequently all of the income in question is taxable to petitioner William Otto Rienacker. Petitioners intended to and in good faith and acting with a business purpose did enter into a bona fide partnership for the conduct of the business in question during the year 1945. [Opinion] HILL, Judge: We have found as a fact that petitioners in good faith and acting with a business purpose intended to be partners for Federal tax purposes in the conduct of the enterprise in question during the year ended December 31, 1945. That finding is, in accordance with the direction of the Supreme Court in , based upon a consideration of "* * * all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship *379 of the parties, their respective abilities and capital contributions, the actual control of income and the purpose for which it is used * * *" and other factors. In approaching the question before us "it is important to remember that the peculiarities which, in the general law of contract, liability, etc., distinguish a partnership from other forms of unincorporated joint venture, are immaterial in the income tax law. 'Partnership' is defined by the Internal Revenue Code for income tax purposes and, as thus defined, includes any form of unincorporated joint venture. So the sum of the matter is that if two or more persons have a real participation in a business or venture, and it is their real intent that the business or venture be joint, a 'partnership' exists for income tax purposes." . It is true, as respondent has pointed out, that there is some irreconcilable testimony as well as certain vagueness in the record. There is, for example, some irreconcilability concerning the amount of services which Emmy performed for the business after 1942 and the nature of certain advances which she made to it in 1944 and 1945. Despite those *380 weaknesses in their case, however, we believe that the evidence of intent to form a partnership or joint venture preponderates in favor of the petitioners. We find in the record an intent on the part of petitioners to form a partnership as far back as the beginning of the business in 1933. At that time petitioners consulted a lawyer for the purpose of conducting the business in the partnership form. That lawyer testified that he advised them that under Michigan law they could not do so. That manifestation of an intent to operate the enterprise as a partnership was again expressed, so this lawyer testified, in 1940, when the name of the business was changed from Dentool Products Company to Rienacker Industries, and still again in 1942, when the law of Michigan was amended permitting partnerships between husband and wife. At the latter date the lawyer said he advised the petitioners to file the necessary papers in the proper county office. Petitioners, however, did not take the necessary formal steps as holding themselves out as partners until 1945, the year in question. It is thus apparent that a partnership intent was evidenced years before the taxable period in question. There *381 was good reason for the petitioners' attempt to carry on the business in the partnership form in 1933 since Emmy then contributed the necessary capital to put it in operation. It was with this capital that the first machines of the business were purchased. It is not clear from the record exactly what was the amount she contributed, but the evidence supports a finding that it was a substantial portion of the approximately $5,000 which she had at that time. That Emmy contributed a sizable amount in the beginning period of the business is backed up by documentary evidence showing that during 1937 she advanced the business some $2,600.92. Apparently such advances at first were considered as loans, but later their status was changed to a contribution of capital for appearing on the back of the receipt indicating those advances is a notation "not to be paid used for additional equipment as part owner." The fact that Emmy's money was used to purchase the first machines used by the business is further borne out by testimony of the lawyer whom petitioners consulted in 1933. In addition we think it clear from the record that at least from 1933 through 1943, during which time petitioners *382 on at least three occasions expressed an intention to carry on the business as a partnership, Emmy contributed vital services and shared in the management and control of the enterprise. Two lawyers who did legal work for the business, an engineer, a manufacturer and a salesman, all of whom had frequent contacts with petitioners during those years, as well as through the taxable year in question, testified that Emmy performed many services for the business. These duties included answering the telephone, delivering orders, participating in conferences with lawyers on patents and business matters, scheduling job orders, supervising certain types of assemblying operations, and discussing production problems with customers. It is apparent, moreover, that Emmy controlled her distributive share of the partnership profits for the year in question. After April 1944 and during 1945 the record shows the money from the partnership was deposited in her bank account. So far as the record shows, she was free to use this money in any way she saw fit. And when the assets of the successor corporation were sold in 1947, a check for $25,000, representing part of the proceeds of such sale, were deposited *383 in Emmy's account at the bank. In view of the above and after a consideration of all the facts, we believe petitioners have shown that Emmy was a participant or joint venturer in the business from its very beginning and that she had at least the status of a joint venturer through the year in question. As we have pointed out before participation in any sort of a joint venture is sufficient status for Federal tax purposes. See , appeal to the United States Court of Appeals for the Second Circuit dismissed on March 13, 1950. (Oct. 18, 1950). In view of our holding it is not necessary to discuss the other issue presented by the pleadings. It follows that respondent erred in his determination. Decisions will be entered for petitioners.